## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 30 2016, 8:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Andrea L. Ciobanu
Amy McCool
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Judy M. Tyrrell
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Paternity of: L.S.,

Chen Su,

*Appellant-Respondent,*

v.

James Lowe,

*Appellee-Petitioner.*

August 30, 2016

Court of Appeals Case No.
49A02-1512-JP-2196

Appeal from the Marion Circuit Court

The Honorable Sheryl Lynch, Judge

The Honorable Tamara L. McMillian, Magistrate

Trial Court Cause No.
49C01-0909-JP-41285

**Robb, Judge.**

# Case Summary and Issues

[1] Chen Su ("Mother") appeals the trial court's order modifying custody, parenting time, and child support for L.S., her child with James Lowe ("Father"). She raises two issues for our review, which we restate as follows: 1) whether the trial court's judgment modifying custody of L.S. from Mother's sole legal custody to Father's sole legal custody is clearly erroneous, and 2) whether the trial court's order regarding the payment of health care expenses is clearly erroneous.[1] Concluding the trial court did not commit clear error in either respect, we affirm.

# Facts and Procedural History

[2] L.S. was born in December 2008. Father's paternity was established in 2009. By order dated September 26, 2011, the trial court awarded legal and physical custody of L.S. to Mother, with Father to have parenting time as ordered. The court noted the parties "are not typical of 'high conflict' parents but have demonstrated communication difficulties regularly." Appellant's Appendix at 50. Additionally, the trial court found as follows:

> 10. Both parents testified that Mother always included Father prospectively on decisions related to [the child's] well-being.
> 11. Mother has made reasonable decisions regarding health,

---

[1] Mother originally raised a third issue in her brief regarding the validity of the order as it was signed only by a magistrate and not counter-signed by the trial court judge. Mother subsequently filed a motion to dismiss that argument because the judge had indeed counter-signed the order and her argument was therefore moot. By separate order, we grant that motion and do not address that issue herein.

education, daycare and religion for [the child] and has included Father in all areas even with sole legal custody.

* * *

13. Mother wishes to retain sole legal custody of [the child] and shall include Father in major life decisions in advance of the final decision being made.

*Id.* at 54. A Parenting Time Coordinator was appointed for two years, though this term was later extended.

[3] Several issues arose over the next few years. L.S. began school at Park Tudor in the fall of 2013 when she was four years old. Park Tudor has a "junior kindergarten" and a "senior kindergarten" class. Father thought L.S. should attend junior kindergarten with other children her age, but Mother placed her in the senior kindergarten class, "effectively . . . skipping a grade level." Transcript at 59. Although L.S. did well in school academically, L.S.'s teacher recommended that L.S. attend "senior kindergarten" again in the fall of 2014. Father agreed with this recommendation so L.S. would be more on par socially with her classmates, but Mother advanced L.S. to the first grade despite the teacher's recommendation and Father's wishes. In the fall of 2014, an incident occurred in class which was upsetting to L.S. and to Mother. Mother addressed the issue with the school before informing Father of the incident. Upon being informed of the incident and included in the ensuing resolution, Father felt the school "went above and beyond" in handing the situation appropriately. Tr. at 65. Mother disagreed and told Father she wanted to withdraw L.S. from Park Tudor. Father did not want to take L.S. out of Park Tudor at all but he

encouraged Mother to at least wait until the end of the semester. Mother nonetheless withdrew L.S. from Park Tudor without informing Father she had done so and enrolled L.S. in a new school of Mother's choosing that she had never mentioned to Father. In fact, L.S. had already been attending her new school for a couple of days before Father became aware that she was no longer at Park Tudor. L.S. indicated she would have preferred to stay at Park Tudor.

[4] Mother and Father also clashed over medical and dental care for L.S. Mother was reluctant to allow recommended x-rays or administer prescribed medication. On one occasion when Mother was traveling out of the country for business and Father was caring for L.S., Mother did not leave Father a medication that had been prescribed for L.S. L.S.'s doctor's office called in a second prescription for Father to pick up. Father informed Mother via e-mail he had obtained the medication and intended to administer it. Mother instructed him not to give L.S. the medication, so he did not. When Mother returned, she requested Father turn over to her his supply of the medication so she would know he was not giving it to L.S. against her wishes. On another occasion, Mother took L.S. to an immediate care facility for an illness. Although she informed Father so he could also attend, a miscommunication led to him going to a different facility and missing the appointment. Thereafter, Father asked to see the medical records from the visit, but Mother would not provide them. Father then called the facility directly but Mother refused to allow the facility to release the records to him. Mother also began taking L.S.

to a counselor without informing Father; he learned about the counseling from L.S. herself after she had already attended at least two appointments.

[5]     On November 6, 2013, Father filed an Amended Motion to Modify Custody, Parenting Time, and Child Support, requesting the court modify custody to joint legal custody or, in the alternative, grant him sole legal custody; to modify parenting time so that the parties have equal parenting time; and to modify child support. Dr. Randall Krupsaw had completed a custody evaluation during the initial paternity proceedings; he was appointed to update his report after Father filed this motion. While this motion remained pending, Father filed a Motion for Sole Legal Custody on December 3, 2014. Dr. Krupsaw filed his updated custody evaluation in April 2015.

[6]     After the parties engaged in an unsuccessful attempt to mediate this dispute, the trial court held a hearing in September 2015. Dr. Krupsaw testified and stated that although he recommended sole legal custody in one parent due to the "magnitude of the difference between the parents" about certain issues, tr. at 26, he did not ultimately recommend one parent or the other have sole legal custody because there were positives and negatives with each parent. Nissa Ricafort, the Parenting Time Coordinator, testified that although she believed both parents really love L.S. and in general have the same views of what is best for her, "there is a lot of dispute on how that is defined, and how we reach these decisions, and I have been racking my brain trying to figure out a more effective way to facilitate communication, and I have not been able to do it." *Id.* at 149-50. Ricafort believed that as between the two parents, Father was more likely

to include Mother in major decisions regarding L.S., to follow doctor and dentist recommendations, to include Mother in school and extra-curricular activity decisions, and to cooperate with a parenting time coordinator in the future.

[7] Following the hearing, the trial court issued extensive findings of fact, culminating in the following order, in relevant part:

> 1. The Court orders Father to have sole legal custody of the child, effective the date of this order.
> 2. The Court orders Father to have equal parenting time of the child, which results in Mother and Father having joint physical custody of the child, effective the date of this order.
> * * *
> 4. The Court orders Mother the custodial parent for controlled expenses. Mother and Father shall keep a set of clothes for the child at their homes. Mother shall be responsible for purchasing the child's coats and shoes which will transfer back and forth between Mother and Father's homes. The Court clarifies, Mother shall also be responsible for all other controlled expenses pursuant to the Indiana Parenting Time Guidelines.
> * * *
> 6. The Court orders Mother to provide health insurance for the minor child as long as it is reasonable, accessible, and available. Mother shall pay the first $1,204.32 per year of the child's uninsured medical, dental, optical, orthodontic, and prescription expenses, after which Mother shall pay 67% and Father shall pay 33% of any additional uninsured health care expenses that year
> . . . .

Appellant's App. at 41-43. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

The party seeking to modify child custody bears the burden of demonstrating that the existing custody arrangement should be altered. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). Whereas there is no presumption for either parent in an initial custody determination, Ind. Code § 31-14-13-2, a more stringent standard applies to a custody modification because "permanence and stability are considered best for the welfare and happiness of the child," *Steele-Giri*, 51 N.E.3d at 124 (citation omitted). At the request of the parties, the trial court entered specific findings of fact and conclusions thereon in support of its order granting Father's motion for change of custody. Under these circumstances, we will "not set aside the findings or judgment unless clearly erroneous," and will give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). The findings are controlling unless the record contains "no facts to support them either directly or by inference." *In re Marriage of Gertiser*, 45 N.E.3d 363, 369 (Ind. 2015) (citation omitted). A judgment is clearly erroneous if no evidence supports the findings, the findings fail to support the judgment, or if the trial court applies an incorrect legal standard to properly found facts. *In re Marriage of Marek*, 47 N.E.3d 1283, 1288 (Ind. Ct. App. 2016), *trans. denied*. We therefore assess whether the evidence supports the findings made by the trial court and whether the findings in turn support the judgment. *Bogner v. Bogner*, 29 N.E.3d 733, 741 (Ind. 2015).

[9] In family law matters, there is a well-established preference for granting latitude and deference to trial court judges. *Steele-Giri*, 51 N.E.3d at 124 (citation omitted). As a reviewing court, we "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Id.* (citation omitted). Rather, appellate deference to the determinations of trial court judges in domestic relations matters is warranted "because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. . . . [They] are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).

## II. Change of Custody

[10] The trial court's order changed the custody of L.S. from sole legal custody in Mother to sole legal custody in Father.

> The court may not modify custody unless:
> (1) modification is in the best interests of the child; and
> (2) there is a substantial change in one (1) or more of the factors
> that the court may consider under section 2 . . . of this chapter.

Ind. Code § 31-14-13-6. Indiana Code section 31-14-13-2 states the court "shall consider *all* relevant factors, *including*" the following: 1) the age and sex of the child; 2) the wishes of the child's parents; 3) the wishes of the child, with more

consideration given to the wishes of a child who is at least fourteen years old; 4) the interaction and interrelationship of the child with the child's parents; 5) the child's adjustment to home, school, and the community; and 6) the mental and physical health of everyone involved.[2] (Emphasis added.) By its plain language, the statute does not provide an exhaustive list of the factors to be considered in determining custody. "[W]ith respect to legal custody, the welfare of the children, not the wishes and desires of the parents, is the primary concern of the courts." *Carmichael v. Siegel*, 754 N.E.2d 619, 635 (Ind. Ct. App. 2011).

[11] The trial court made the following findings and conclusions relevant to its custody decision:

*Findings of Facts*
Legal Custody

* * *

18. Previously, the child went to Med Check. Mother called Father to inform him of the visit but Father went to the wrong location. Father asked Mother for a copy of the child's medical records and Mother refused to give them to him. Father called the doctor's office to obtain a copy of the child's medical records and Mother told the doctor's office not to release the information to Father.
* * *
21. According to the Paternity Judgment, the parties were ordered to work together to attempt to agree on the child's extra-

---

[2] We have omitted factors not relevant to this situation.

curricular activities and share the expense 50/50.

22. Mother usually unilaterally selects the child's extra-curricular activities without Father's input.

* * *

31. Mother failed to inform Father that she withdrew the child from Park Tudor before she did it.

* * *

34. When Mother withdrew the child from Park Tudor, Mother enrolled the child in IPS School 91 without consulting with Father. Father learned the child was enrolled at IPS School 91 after Mother enrolled the child there.

35. Mother admitted that she enrolled the child into IPS School 91 without informing Father even though she was aware that she was to consult with Father.

36. Mother made many school decisions without consulting with Father.

* * *

40. The Parenting Coordinator testified that Mother failed to consider Father's opinion regarding a kindergarten program or whether the child should skip a grade.

* * *

52. The child sees a psychologist. Mother admitted that she failed to inform Father that she was taking the child to see a psychologist.

53. Dr. Krupsaw recommended that one of the parties have sole legal custody of the child due to the parties being unable to communicate effectively regarding the child. . . . Dr. Krupsaw did not recommend which parent should have sole legal custody.

* * *

55. Dr. Krupsaw concluded that if the Court orders sole legal custody to Father, there would be a high likelihood the child would get more medical care and Father would communicate regularly with Mother.

56. Dr. Krupsaw concluded that if sole legal custody remains with Mother, there would be a high likelihood that Mother will communicate less with Father.

* * *

61. The Parenting Coordinator testified that Mother makes decisions about the child then tells Father later.

* * *

69. The Parenting Coordinator testified that Father is more likely to include Mother in the child's major life decisions.

* * *

74. Dr. Krupsaw found moderate support that Mother made some major parenting decisions without Father that could impact Father's relationship with the child.

* * *

## Physical Custody/Parenting Time

* * *

10. The child was two (2) years old at the time of the initial evaluation.

11. The minor child is now six (6) years old.

* * *

14. The child has a positive relationship with both parents, their homes, and communities.

* * *

17. The child is not well-adjusted to IPS School 91.

18. According to Dr. Krupsaw's custody evaluation, the child preferred Park Tudor over IPS School 91.

* * *

*Conclusions of Law*
Legal Custody

* * *

3. Father is willing and more likely to communicate and cooperate with Mother about the child to advance the child's welfare.

4. Mother has demonstrated a pattern of being unwilling to communicate and cooperate with Father to advance the child's

welfare.

* * *

6. The child has a close and beneficial relationship with both Mother and Father.

* * *

8. Both Mother and Father have a positive physical and emotional home environment for the child.

* * *

10. There has been a substantial change of circumstances regarding the issue of legal custody of the child and the best interest of the child.

11. It is in the child's best interest to modify legal custody and for Father to have sole legal custody of the child.

Appellant's App. at 23-30, 36-37.

[12] Mother does not challenge any of the trial court's findings of fact. *See* Appellant's Brief at 13.[3] Rather, Mother contends the trial court's findings do not support its judgment modifying custody. Specifically, Mother contends the trial court's judgment rested solely on the communication difficulties between the parties, and asserts this does not represent a substantial change because lack

---

[3] In fact, Mother concedes the trial court's findings of fact "establish the relevant facts" and does not include within her brief her own statement of facts. *Id.* Although Appellate Rule 46(A)(6)(b) requires the statement of facts in a brief to be "stated in accordance with the standard of review appropriate to the judgment or order being appealed," we do not believe that provision allows a party to completely dispense with including a narrative statement of facts in its brief even if it agrees with the trial court's findings. Appellate Rule 46 also requires the statement of facts to be supported by page references to the record, which the trial court's order does not include. Our review would have been greatly facilitated by a statement of facts including the appropriate record citations, especially considering the trial court's order is twenty-six pages long and includes well over 100 findings of fact.

of communication was identified as an issue in the initial custody determination, as well.

[13]     We agree communication between the parents was identified as an issue at the time of the initial custody determination. That is, in part, why the trial court did not award joint legal custody to the parties at that time. However, in 2011, the trial court also found that Mother "always included Father prospectively on decisions relating to [L.S.'s] well being" and "has made reasonable decisions regarding health, education, daycare and religion for [L.S.]" Appellant's App. at 54. Mother was therefore granted sole legal custody and given the ability to make major decisions for L.S. with the proviso that she was to fully discuss any such decisions with Father and consider his input before making the final decision. *Id.* at 63. In the ensuing years, Mother has made numerous major decisions regarding L.S. without consulting Father first, some of which Dr. Krupsaw felt had the potential to undermine the relationship between Father and L.S. Mother has made unilateral medical decisions against physician advice, has refused to allow Father to provide medical care as he saw fit when he was actually with L.S. and she was out of town, and has refused to allow Father to have complete medical information, to which he is entitled. The Parenting Time Coordinator testified she sometimes felt that when Mother *did* consult Father in advance, "it became frustrating because I felt like we were going through the motions to say that we went through the motions, but that . . . the decision had already been made." Tr. at 138. Therefore, the trial court's findings regarding Mother's unwillingness to cooperate in making

decisions regarding L.S. and that Father would be more likely to communicate and involve Mother in decision-making does demonstrate a substantial change from the circumstances existing at the time of the original determination. The parties' ability to communicate and work together is essential to the welfare of the child and is relevant to the determination of the appropriate custodial arrangement.

[14] Mother does not challenge the trial court's finding that modification of custody would be in L.S.'s best interests, nor does she challenge the modification of parenting time. However, we note the total effect of the trial court's order: Father was granted sole legal custody for purposes of educational and medical decision-making based on the substantial change in circumstances discussed above, but the parties were granted equal parenting time. Father testified that although he was requesting sole legal custody because he does not believe it is feasible at this time to make reasonable co-parenting decisions together, he "[v]ery badly" wanted the parties to have equal parenting time "[b]ecause I think that we both have very important things to share with our daughter, and I think that she needs to be able to see us as equal parents . . . ." *Id.* at 55. Dr. Krupsaw testified that it would be in the best interests of L.S. for the parties to have an equal split in parenting time because L.S. made it clear that she wants to "spend equal time with each parent because she loves them equally; enjoys the time with them equally, and would like to have that kind of arrangement solely for her own reasons not because . . . she is trying to be fair to the parents." *Id.* at 23-24. Based on our review of the record and the trial court's

extensive findings and interaction with these parties, we will not second guess the trial court's determination that modification of legal custody was appropriate.

## II. Healthcare Expenses

In its child support calculation, the trial court designated Mother as the parent who would pay controlled expenses and ordered Mother to pay the first $1,204.32 of uninsured healthcare expenses incurred on behalf of L.S. Mother contends this is in error because she is paying for L.S.'s health insurance and also paying all controlled expenses, so "it would be patently unfair for Mother to also be deemed the custodial parent for uninsured health care expenses." Appellant's Br. at 21.

Notably, Mother does not challenge the trial court's designation of her as the parent who will pay controlled expenses. Her argument therefore misunderstands the Child Support Guidelines. Where parenting time is to be shared equally,

> [E]ither the mother or father must be designated as the parent who will pay the controlled expenses. Then, the other parent is given the parenting time credit. The controlled expenses remain the sole obligation of the parent for whom the parenting time credit is not calculated.

Commentary to Ind. Child Support Guideline 6 ("Child Support When Parenting Time is Equally Shared"). Controlled expenses are defined by the Guidelines as "items like clothing, education, school books and supplies,

ordinary uninsured health care and personal care." *Id.* ("Analysis of Parenting Time Costs:  Controlled Expenses").[4]  Similarly, Child Support Guideline 7 states "[o]rdinary uninsured health care expenses are paid by the parent who is assigned to pay the controlled expenses (the parent for whom the parenting time credit is not calculated) up to six percent (6%) of the basic child support obligation."

[17]  Here, Mother and Father share parenting time equally.  Therefore, although controlled expenses are "typically paid by the custodial parent," neither parent is the de facto physical custodian here and the trial court was required to designate one party as the parent who will pay controlled expenses.  The trial court so designated Mother, and then calculated the parenting time credit for Father.  As the parent responsible for controlled expenses, Mother is responsible for six percent uninsured health care expense.  This is in accordance with the Child Support Guidelines and Mother has shown no error.

# Conclusion

---

[4] The Commentary to Guideline 6 identifies two types of expenses that are incurred by both parents: transferred expenses (such as food expenses, which are incurred only when the child resides with a parent and are transferred with the child as she moves from on residence to the other) and duplicated expenses (such as housing costs, which are incurred when two households are maintained for a child regardless of whether the child is residing there).  "A third category of expenses is controlled expenses, *such as the 6% uninsured health care expense* that remains the sole obligation of the parent for whom the parenting time credit is not calculated."  Commentary to Child Supp.G. 6 ("Analysis of Parenting Time Costs").  "These categories of expenses are not pertinent for litigation."  *Id.*

[18] The trial court's judgment that Father should have sole legal custody of L.S. with shared parenting time and that Mother should pay the controlled expenses including the uninsured health care expense is not clearly erroneous. The judgment is therefore affirmed.

[19] Affirmed.

Najam, J., and Crone, J., concur.