## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2017, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Lemon
Knox, Indiana

ATTORNEY FOR APPELLEE

Lizbeth W. Pease
Nichols & Wallsmith
Knox, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S. S., <br> *Appellant-Respondent,* <br><br> v. <br><br> C. D., <br> *Appellee-Petitioner.* | May 25, 2017 <br><br> Court of Appeals Case No. <br> 75A03-1612-DR-2887 <br><br> Appeal from the Starke Circuit Court <br><br> The Honorable Kim Hall, Judge <br><br> Trial Court Cause No. <br> 75C01-1210-DR-109 |

**Bailey, Judge.**

# Case Summary

[1] S.S. ("Mother") appeals an order granting the custody modification petition of C.D. ("Father") as to two of their three children. She presents the sole issue of whether the custody modification order lacks sufficient evidentiary support. We affirm.

# Facts and Procedural History

[2] The parties were married on August 9, 1999, and separated on March 20, 2012. They had three children, M.D. (born in 1999), A.D. (born in 2001), and L.D. (born in 2009). The marriage was dissolved on November 19, 2013. The parents shared legal custody of all three children. Father was awarded the physical custody of M.D. and Mother was awarded the physical custody of the two younger children. After Father experienced a house fire and housing insecurity, M.D.'s custody was changed to Mother.

[3] In 2016, when Mother had physical custody of all the children, M.D. wrote a letter to the trial court expressing her desire to return to Father's custody. Around the same time, A.D. contacted Father via text to report that L.D. had been struck in the face by his maternal grandfather.[1] Both M.D. and A.D. sent Father photo images showing L.D.'s black eye and swollen lip.

---

[1] The Department of Child Services investigated and concluded that L.D.'s injuries were self-inflicted.

[4] On September 20, 2016, Father filed a petition to modify custody of M.D. and L.D.[2] In the petition, Father stated that circumstances had changed substantially. He averred that M.D. wished to return to his custody. He also averred that L.D. had been hit in the face by an "unknown" person, resulting in a black eye. (App. at 10.) Father alleged that L.D. had appeared for parenting time with bruises "on a number of occasions." (App. at 10.) Finally, Father asserted that L.D. is a child with behavioral issues but Mother refused testing by a specialist. Father requested, alternatively, physical custody of L.D. or an order that Mother be required to obtain further evaluation for L.D.

[5] Hearings were conducted on November 1 and November 9, 2016. The trial court also conducted an in-camera interview with M.D. On November 30, 2016, the trial court granted Father's petition to modify physical custody of M.D. and L.D. to him. Mother now appeals.

# Discussion and Decision

[6] Indiana Code Section 31-17-2-21 provides that a trial court "may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under [Ind. Code Section 31-17-2-8] …" Indiana Code Section 31-17-2-8 sets forth relevant factors that must be considered, including:

---

[2] By all indications, A.D. wished to remain with Mother and Father did not oppose this.

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parent or parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

    (A) home;

    (B) school; and

    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian …

The party seeking to modify custody bears the burden of demonstrating that the existing custody order should be altered. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016).

[7] On appeal from a family law decision, we accord great deference to the trial court judge, who was in the position to see witnesses, observe their demeanor, and scrutinize their testimony. *Id.* We do not reverse a decision because the evidence might support some other conclusion; rather, the evidence must positively require the conclusion contended for by the appellant before there is a basis for reversal. *Id.* Appellate judges will not reweigh the evidence nor reassess witness credibility, and we will view the evidence most favorably to the judgment. *Id.*

[8] The evidence most favorable to the judgment is that M.D.'s and Mother's relationship had deteriorated to the point of a physical altercation. When police temporarily removed M.D. from Mother's home, she was taken to an aunt's home because Mother advised the police that Father did not possess parental rights. M.D. was permitted to call Father only after police were summoned to the aunt's home.

[9] Father and the paternal grandmother each testified that L.D. had often appeared for parenting time with bruises. The grandmother testified that she had seen a handprint bruise. Father recalled seeing bruising on one arm from the wrist to the elbow and other bruises on L.D.'s hips and thigh. He described one bruise as a "baseball size." (Tr. Vol. II at 19.) Father testified that he

confronted Mother about corporal punishment and she replied that a paddle was "the only thing that works." (Tr. Vol. II at 22.) Per Father's testimony, he had encouraged Mother to obtain testing of L.D. "for behavioral issues," but Mother had not agreed. (Tr. Vol. II at 25.) She had obtained prescriptions for L.D., but stopped and started his medication.

[10] After L.D. was barred from riding the school bus,[3] Father had urged Mother to investigate special education options for L.D. Mother initially disagreed with that plan. However, after school personnel urged the use of an Individualized Educational Plan, Mother agreed but did not inform Father of the meeting. On at least two occasions, Mother removed Father's information from the school records. She did not consult Father as to medical appointments and did not inform him when M.D. was involved in a vehicle accident.

[11] Mother concedes that there had been a change in the relationship between herself and M.D. However, she argues that M.D.'s expressed wishes provide an inadequate basis for a change of custody. She also notes that there was evidence of a lack of parental communication and cooperation, but insists that her shortcomings in this regard did not amount to egregious behavior. Mother requests a reweighing of the evidence, something we will not do. *Steele-Giri*, 51 N.E.3d at 124.

---

[3] This was apparently due to L.D. banging his head on the bus windows when he was upset.

[12] The evidentiary record discloses evidence of a change in one or more statutory circumstances that a trial court is to consider in a custody modification proceeding.  Also, there is evidence to support the trial court's determination that a change of custody is in the best interests of M.D. and L.D.

[13] Affirmed.

Vaidik, C.J., and Robb, J., concur.