## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 30 2017, 10:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEES |
|---|---|
| John J. Schwarz, II | Ralph R. Huff |
| Schwarz Law Office, PC | Jones Huff Jones & Richeson, LLP |
| Hudson, Indiana | Plymouth, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Randy Glingle and Roberta Glingle, | October 30, 2017 |
| *Appellants-Defendants,* | Court of Appeals Case No. 50A05-1704-MI-723 |
| v. | Appeal from the Marshall Circuit Court |
| Ryan Glingle and Julie Glingle, | The Honorable Curtis D. Palmer, Judge |
| *Appellees-Plaintiffs.* | Trial Court Cause No. 50C01-1509-MI-50 |

**Najam, Judge.**

# Statement of the Case

Randy Glingle and Roberta Glingle appeal the trial court's order granting Ryan Glingle and Julie Glingle's[1] motion to enforce the parties' settlement agreement and impose sanctions. Randy presents the following issues for our review:

1. Whether the trial court erred when it denied Randy's motion to dismiss Ryan's motion.

2. Whether the trial court erred when it imposed sanctions on Randy.

3. Whether the trial court erred when it ordered Randy to pay one-half of an auctioneer's commission.

We affirm.

# Facts and Procedural History

Randy and Ryan each had an undivided one-half interest in an eighty-acre farm located in Marshall County ("the farm"). On September 30, 2015, Ryan filed a petition to compel partition of the real estate. On March 10, 2016, following mediation, the parties agreed to sell the farm and entered into a settlement agreement that provided in relevant part that: "[a]ll costs of sale or auction shall be paid one-half (1/2) by [Ryan] and one-half (1/2) by [Randy]"; if the property did not sell by October 1, 2016, the parties would enter into a contract

---

[1] For ease of discussion, when we hereinafter refer to the appellants-defendants, we will name only Randy, and when we refer to the appellees-plaintiffs, we will name only Ryan.

for the auction of the property; closing of any sale would be no longer than sixty days after the date of the sale; the auctioneer would be Phil Hahn & Associates ("Hahn"); upon the sale of the property the parties would "execute and exchange, by their attorneys, a stipulation for dismissal of the [partition action]"; and they would "execute any and all documents necessary to carry out the terms hereof[.]" Appellants' App. Vol. 2 at 33-34.

[4] On October 10, 2016, Randy and Ryan contracted with Hahn to sell the farm at auction, and they agreed to pay Hahn 3.5% of the "gross sale amount." *Id.* at 43. On December 6, Hahn sold the farm at auction to two buyers: Allen Motz bought forty acres for $312,500, to be paid in cash; and Glingle Farms Holdings, LLC ("Glingle Farms"), bought forty acres for $312,500. Randy, an authorized member of Glingle Farms, executed the purchase agreement, which included a provision stating that Randy agreed to "pay the proportionate share of expenses." *Id.* at 45. Randy bought the forty acres with his equity in the farm.

[5] The parties scheduled both closings for January 27, 2017, at Metropolitan Title of Indiana. At some point prior to that date, Tammy Borggren, Metropolitan's branch manager, went to Randy's house to get his signatures on the deed and an authorization for his son Rance "to sign everything else at closing" because Randy and Roberta were going to be out of town for the winter months. Tr. at 27. Randy signed the documents as requested, but he told Tammy that he would not pay "any closing costs." *Id.* at 28. Thereafter, on January 24, Tammy prepared the closing statements. The closing statement for the sale to

Randy included the following costs to be paid by Randy: Hahn's commission of $10,937.50, and "Title/Escrow Charges" and "Disbursements" totaling $1,299. Appellants' App. Vol. 2 at 16. After Tammy sent the closing statement to Rance, Rance called Tammy and told her that Randy "would not pay any costs." Tr. at 29. Accordingly, Hahn and Tammy "mutual[ly] agree[d]" to cancel both closings. *Id.* at 60.

[6] On February 7, Ryan filed a "Motion to Enter Judgment and Impose Sanctions, Including an Award of Costs and Fees." Appellants' App. Vol. 2 at 35. In that motion, Ryan asked the trial court to: enforce the parties' settlement agreement; order Randy to proceed to closing on both sales; impose sanctions against Randy, including Ryan's attorney's fees; and order Randy to pay his share of Hahn's commission and other closing costs. Randy filed a motion to dismiss Ryan's motion. Following a hearing on March 15, the trial court entered an order, the same day, stating in relevant part as follows:

> After hearing evidence and argument, the Court Ordered that the auctioneer's commission expense disputed by [Randy and Roberta] be paid by them at the real estate closing scheduled for March 16, 2017; but that those funds be held in trust by the title company until further order of the court. All parties were ordered to attend the real estate closing set for March 16, 2017. All remaining matters were taken under advisement.

> * * *

> Upon preparing the matter for a real estate closing, [Randy and Roberta] refused to pay any portion of the auctioneer commission attributable to the second parcel. Apparently,

[Randy and Roberta's] position is that they will not acquire any new property interest as a result of the auction that they did not already possess. The Court finds no legal support for [Randy and Roberta's] position. [Randy and Roberta] initially held an undivided one-half interest in an 80[-]acre parcel; they now will own a 40[-]acre parcel in fee simple.

Furthermore, [Randy and Roberta] had the ability to bargain for the elimination of any auction or realtor commission in the event they purchased the property in the mediation agreement, the auctioneer's contract[,] and the purchase agreement. They failed to bargain for or include any such language in any of the numerous agreements they signed. The initial closing of the real estate matters was delayed because of [Randy and Roberta's] refusal to pay any portion of the auctioneer's commission on the parcel they purchased, thereby causing [Ryan and Julie] to incur additional attorney fees in the sum of $2,360.00.

[Randy and Roberta's] Motion to Dismiss asserts [Ryan and Julie] lack standing to attempt to enforce the Purchase Agreement and the auctioneer's contract requiring the payment of a commission to the auctioneer. The court finds that, as parties to both contracts, [Ryan and Julie] have standing to enforce the contracts to obtain the benefits for which they bargained (auction services and closing of the real estate transactions).

THEREFORE, THE COURT NOW ORDERS:

1. A Judgment is entered enforcing the mediated agreement.

2. [Randy and Roberta's] Motion to Dismiss is DENIED.

3. As a sanction for [Randy and Roberta's] conduct they shall pay the sum of $2,360.00 to [Ryan and Julie] as a reimbursement for attorney fees.

4. Metropolitan Title of Indiana[,] LLC shall disburse the disputed commission fees held in trust to Hahn Auctioneers, Inc.

*Id.* at 8-10. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[7] Because the court's judgment follows an evidentiary hearing on Ryan's motion to enforce the settlement agreement and Randy's motion to dismiss, and because the court entered findings and conclusions based on the evidence presented at that hearing, we review the court's judgment under our clearly erroneous standard of review. We review the issues covered by the findings with a two-tiered standard of review that asks whether the evidence supports the findings and whether the findings support the judgment. *See Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016).

## *Issue One: Motion to Dismiss*

[8] Randy first contends that the trial court erred when it denied his motion to dismiss, in which he ostensibly alleged both a lack of standing and a "failure to state a claim upon which relief [can] be granted." Appellants' App. Vol. 2 at 53. However, we note that Randy's motion to dismiss does not refer to Trial Rule 12(B)(6), and, on appeal, he does not cite to Trial Rule 12(B)(6) in support of any of his contentions. Neither does Randy cite to any case law that addresses the issue of standing. Rather, Randy now asserts, generally, that Ryan "lacked authority to request the trial court [to] impose commission fees

on [Randy]" because "Hahn was not a party to the partition action" and the "dispute of the commission fee was a matter between Hahn and [Randy]." Appellants' Br. at 11. Randy also maintains that the trial court should have granted his motion to dismiss because Ryan had "failed to comply with the terms of the mediation agreement when [he] refused to file the stipulation of dismissal." *Id.* We address each contention in turn.

*Ryan's "Authority" to Enforce Settlement Agreement*

[9] First, Randy does not cite to any relevant statutory or case law to support his contentions regarding Ryan's authority, or lack thereof, to enforce the settlement agreement. Second, to the extent Randy claims that Ryan did not have the "authority" to ask the trial court to enforce a provision of the parties' settlement agreement,[2] we cannot agree. Ryan, as a party to the agreement, had a right to seek its enforcement. *See Flaherty & Collins, Inc. v. BBR-Vision I, L.P.*, 990 N.E.2d 958, 971 (Ind. Ct. App. 2013), *trans. denied*. And finally, to the extent Randy claims that Hahn was a necessary party, Randy made no contention to the trial court, and makes no contention on appeal under Trial Rule 12(B)(7) or supporting case law, that Ryan had failed to join "a party needed for just adjudication under [Trial] Rule 19[.]" Randy's contentions on this issue are without merit.

---

[2] The agreement provided in relevant part that "[a]ll costs of sale or auction shall be paid one-half (1/2) by [Ryan] and one-half (1/2) by [Randy]." Appellants' App. Vol. 2 at 41.

Randy next contends that Ryan "failed to provide evidence that supports [his] allegations that [Randy] refused to pay costs pursuant to the mediation agreement and, therefore, delayed the closing beyond the terms and conditions of the mediation agreement." Appellants' Br. at 12. Further, Randy maintains that, in any event, it was not him but Ryan who caused the delay in the closings because Ryan "refused to comply with the terms of the mediation agreement and the title company testified [sic] that it would not close the land sale with pending litigation." Appellants' Br. at 13. We cannot agree.

First, Borggren unequivocally testified that Randy and Rance had both told her prior to the scheduled closings that Randy refused to pay "any closing costs." Tr. at 28. Thus, the evidence supports the trial court's finding that Randy caused the delay in the closing on that basis. Indeed, Randy's declaration prior to closing that he would not pay the closing costs was, in effect, an anticipatory breach. *See, e.g.*, *Ralph E. Koressel Premier Elec., Inc. v. Forster*, 838 N.E.2d 1037, 1045 (Ind. Ct. App. 2005) (holding that prospective seller of business anticipatorily breached listing agreement with broker where seller notified broker that he did not intend to pay broker any commission on the sale because he believed that broker had not done enough work to justify payment of the commission). Second, Randy does not direct us to any part of the record on appeal to show that he argued to the trial court that Ryan's "failure" to file the parties' stipulation of dismissal caused the delay, and our review of the transcript and appendices does not indicate that he made that argument below.

In any event, the parties' settlement agreement required only that the parties "execute and exchange" the stipulation for dismissal "upon the sale of the real estate" and is silent as to when it had to be filed with the trial court. Appellants' App. Vol. 2 at 42. Randy has not shown that the trial court's conclusion that he caused the delay in closing was clearly erroneous.

### Issue Two: Sanctions

[12] Alternative Dispute Resolution Rule 2.7(E)(3) applies to mediation and provides that, in the event of *any* breach or failure to perform under a mediation agreement, upon motion, and after hearing, the court may impose sanctions, including entry of judgment on the agreement. Here, the trial court found that the closing was delayed "because of [Randy's] refusal to pay any portion of the auctioneer's commission on the parcel [he had] purchased, thereby causing [Ryan] to incur additional attorney fees in the sum of $2,360.00." Appellants' App. Vol. 2 at 9. Accordingly, the court imposed sanctions against Randy in the amount of $2,360.

[13] Again, Randy asserts that he "did not refuse to cooperate" and "met the terms of the mediation agreement" because he "did not refuse to pay any costs related to the closing." Appellants' Br. at 15. But Borggren's testimony that Randy and Rance told her that Randy would not pay "any closing costs" supports the trial court's finding that Randy caused the delay. Tr. at 28. And we reject Randy's contention that Ryan caused the delay when he did not file the

stipulation of dismissal with the trial court prior to closing.[3] The trial court did not err when it imposed sanctions on Randy for violating the terms of the settlement agreement, which required that the parties close the sales within sixty days of the date of the auction.[4]

### *Issue Three:  Auctioneer's Commission*

[14] Finally, Randy contends that the trial court erred when it ordered him to pay one-half of Hahn's commission for the sale of the farm at auction.  Randy maintains that, because the Indiana statute "regarding auctioneer expenses and fee states that the subsection does not apply to a partition action," *see* Ind. Code § 34-55-6-5 (2017), and because Randy "retained one-half of the land that was partitioned following the auction[,]" he was not responsible to pay for any portion of Hahn's commission.  Appellants' Br. at 18.  Again, we cannot agree.

[15] Randy signed the contract with Hahn, which provided in relevant part that Randy and Ryan agreed to pay Hahn 3.5% of the "gross sale amount" after auction.  Appellants' App. Vol. 2 at 43.  Randy also signed the parties' settlement agreement, which provided in relevant part that "[a]ll costs of sale or auction shall be paid one-half (1/2) by [Ryan] and one-half (1/2) by [Randy]."

---

[3]  Randy contends that Ryan "refused" to sign the stipulation of dismissal, but he does not support that contention with any evidence.  Appellants' Br. at 16.  On the other hand, Ryan directs us to evidence that shows that the parties intended to present the stipulation of dismissal to the title company at closing and that he intended to file it with the trial court thereafter.

[4]  Randy's contention that the trial court erred when it awarded *attorney's fees* pursuant to Indiana Code Section 34-52-1-1 is misplaced.  The trial court awarded sanctions under ADR Rule 2.7(E)(3).

*Id.* at 41. The gross sale amount of the farm at auction was $625,000. Thus, Randy was responsible to pay 1.75% of that sum to Hahn. The trial court did not err when it ordered Randy to pay one-half of Hahn's commission.

[16] Affirmed.

Kirsch, J., and Brown, J., concur.