# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 21 2018, 6:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Allison Martinez Wheeler
ROMAN-LAGUNAS & WHEELER, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Cynthia Phillips Smith
LAW OFFICE OF CYNTHIA P. SMITH
Lafayette, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark Kinsey,<br>*Appellant,*<br><br>v.<br><br>Julia Kinsey,<br>*Appellee.* | May 21, 2018<br><br>Court of Appeals Case No.<br>79A02-1712-DR-2743<br><br>Appeal from the Tippecanoe Circuit Court<br><br>The Honorable Thomas H. Busch, Judge<br><br>Trial Court Cause No.<br>79C01-1111-DR-199 |

**Bailey, Judge.**

# Case Summary

Mark Kinsey ("Father") appeals the denial of his motions to modify custody and hold Julia Kinsey ("Mother") in contempt. He also appeals the order modifying child support.

We affirm.

# Issues

Father raises the following, restated issues:

    I.       Whether the trial court clearly erred when it denied Father's motion to modify custody of the parties' children.

    II.      Whether the trial court clearly erred when it denied Father's motion to hold Mother in contempt of court.

    III.    Whether the trial court clearly erred when it modified child support.

# Facts and Procedural History

Father and Mother are the parents of three children: M.X.K., born June 1, 2004; M.R.K., born March 27, 2006; and V.K., born April 1, 2009. The parties' marriage was dissolved on October 2, 2012, at which time the parties were awarded joint legal and shared physical custody of the children. Mother was to have the children Monday through Friday from 8:30 a.m. through 6:00 p.m.,

because she worked a night shift, and Father had the children from 6:00 p.m. through 8:30 a.m. Each parent had the children on alternate weekends.

[5] On April 25, 2013, Father filed a notice of intent to relocate from Tippecanoe County to Carroll County. Mother objected to the relocation, and she filed a petition to modify custody. The trial court denied Father's request to relocate and ordered the children to remain living in Tippecanoe County and attending Tippecanoe schools. The court denied Mother's motion to modify custody and ordered that the previously ordered parenting schedule remain the same.

[6] On December 2, 2013, Father filed another notice of intent to relocate and Mother filed another objection and petition to modify custody. On April 14, 2015, the trial court denied Father's request to relocate and ordered that the parenting time schedule remain as previously ordered. The court denied Mother's petition to modify custody "without prejudice to renewal should [Mother's] application for day-shift be approved." Appellant's App. at 36.

[7] In January of 2016, Mother filed a petition to modify primary physical custody to her because she had obtained a day shift at her employment. Pursuant to the parties' temporary mediation agreement, Mother assumed physical custody of the children in January 2016 and Father had the children on alternate weekends and one weekly overnight visit.

[8] On February 4, 2016, Father filed a motion to modify parenting time. On June 21, 2016, Father filed another notice of intent to relocate. On October 13, 2016, Father filed an amended motion to modify custody and a motion for rule to

show cause why Mother should not be held in contempt of court. The court held evidentiary hearings on all pending matters on October 20, 2016 and March 23, 2017. A court-appointed Guardian ad Litem ("GAL") filed a report on March 9, 2017.

[9] On May 11, 2017, the trial court issued findings of fact, conclusions of law and judgment, stating in relevant part:

> 13. Former Husband presented three reasons for requesting a change of custody: (1) former Wife was providing inadequate care for the children after she left for her employment; (2) [M.X.K.]'s school performance; and (3) former Wife's failure to enroll the children in extra-curricular activities.

> 14. All three of these allegations were examined by the Guardian Ad Litem.

> 15. The former Wife's father lives on the same farm land where she resides with the children. Grandfather supervises the children when they are getting ready for school. The Court finds this is a suitable arrangement.

> 16. [M.X.K.]'s teachers testified he is working up to his potential in most of his classes. They also testified that he often goofs around in class instead of completing his assignments. Former Husband sought to have a case conference about [M.X.K.]'s school performance with all of his teachers. Former Husband never informed former Wife about this meeting or the results of the meeting. This is counter-productive to the academic progress for [M.X.K.]. The parties share joint legal custody pursuant to the prior Court Order.

17. The former Wife has enrolled the children in extra-curricular activities. Since the last Court Order, they have participated in basketball, wrestling, and 4-H. Former Husband's complaints about the lack of participation in outside activities are ill founded.

18. The parties entered into [a] Temporary Mediated Settlement Agreement in 2016. In the agreement, former Husband was to pay the sum of One Hundred and 00/100ths Dollars ($100.00) per week beginning February 19, 2016, and a like sum each week thereafter as temporary child support.

19. A new Child Support Worksheet is attached hereto as Exhibit A. Pursuant to the worksheet, former Husband shall pay the sum of $282.00 per week the first Friday after entry of this Order.

20. The Guardian Ad Litem found former Husband's Motion for Change of Custody should be denied. The children looked happy, well adjusted, comfortable and well- mannered when they met with the GAL. (Report p. 6) The children also reported former Husband denigrates their Mother.

* * *

22. [M.X.K.] received grades of B, A, and C's in the first quarter of his 2016-2017 academic year. (GAL report p. 11) Any failure to turn in homework happened after both parents exercised parenting time.

23. The GAL also contacted former Husband's second ex—wife, Karen Delaney-Stankard. She reported Father had a very difficult time taking care of the three children on his own. She also reported former Husband would talk negatively about his ex-

wife any chance he could do so. Father would tell the children that Mother was a horrible mother and a liar. (GAL report 13-14) It is clear from the report of the GAL that former Husband speaks very negatively about the former Wife to the children on a regular basis. The Court considers this to be pivotal information in making its decision in this case.

24. The GAL notes [M.R.K.] is very academically gifted, while [M.X.K.] struggles more in school. [V.K.] is a good student and reads at or above her grade level. (GAL report p.7—18)

\* \* \*

32. Considering the statutes above, the GAL report, the exhibits, and the testimony of the parties, the Court now denies Former Husband's Custody Modification. The physical custody of the children shall remain with the Former Wife. The Court orders the recommendations of the GAL be adopted and ordered in this matter, with the exception of additional parenting time for the Former Husband for a few hours on Former Wife's weekend. The Court makes this finding in part because of the strife and animosity between the parties.

\* \* \*

34. The Court bases its denial of this request for modification by Former Husband upon the GAL report, the insufficiency of the evidence of a substantial change in circumstances in one of the custody factors pursuant to statute, and that the requested change in custody is not in the best interests of the children.

35. The sufficiency of the evidence presented in this case does not rise to the level required to demonstrate a substantial change

in circumstances. <u>In Re the Marriage of Steele</u>, 51 N.E.3d 119 (Ind. Sup. 2016).

Appellant's App. at 23-29.

[10]     On June 12, 2017, Father filed a motion to correct error regarding the March 23, 2017 order. On September 26, 2017, Father filed an emergency motion to modify custody, and for a rule to show cause. On October 26, 2017, Mother filed a motion for contempt, alleging Father's failure to pay child support. On October 31, 2017, the court held a hearing on all pending motions and ordered as follows:

> 1.     Father's Motion to Correct Errors is in all respects DENIED.
>
> 2.     Father's Amended Motion for Modification and for Rule to Show Cause is in all respects DENIED.
>
> 3.     The Court's Order for hearing held March 23, 2017 is REAFFIRMED.
>
> 4.     Father's Emergency Motion for Modification of Custody, or, in the alternative Modification of Parenting Time is DENIED to the extent it requests emergency relief.
>
> 5.     The parties are ordered to meet and confer regarding: (a) Father's Motion for Modification of Custody or Parenting: Time to the extent it requests non-emergency relief (b) Mother's Petition to Cite for Contempt; and (c) Whether child support should be modified. If no agreement can be reached, the parties

are ordered to schedule further proceedings on any remaining issues.[1]

Father now appeals this order, which reaffirmed the March 23, 2017 order.

# Discussion and Decision

## Modification of Custody

[11]    Father asserts that the trial court erred when it refused to modify the parties' custody order. Our standard of review in a custody modification action is for abuse of discretion. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010) (citations omitted). However, when the trial court enters findings and conclusions pursuant to Indiana Trial Rule 52, as it did here, our standard of review is as follows:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly

---

[1] Pursuant to this order, the motions to modify custody were clearly denied, a child support order was clearly entered, and any further proceedings on the issues of modification of custody/parenting time and/or child support would require new motions by the parties. Thus, the trial court's orders on modification of custody and child support are final appealable orders. Ind. Appellate Rule 9(A)(1); *Haag v. Haag*, 163 N.E.2d 243, 247 (Ind. 1959) (holding an order for support and custody of minor children entered subsequent to divorce decree is, for purpose of appeal, a final judgment appealable as such). Thus, we denied Father's Motion for Acceptance of Interlocutory Appeal in this matter.

erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651-52 (Ind. Ct. App. 2012) (quotation marks and citations omitted).

[12] Under Indiana Code Section 31-17-2-21, a court may not modify a child custody order unless modification is in the child's best interests and there is a substantial change in one of the several factors. Indiana Code Section 31-17-2-8 provides that the factors relevant to a custody order are as follows:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

> (A) home;

> (B) school; and

> (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian . . . .

Thus, a trial court may not modify custody until it determines that a substantial change has occurred and that a modification is in the child's best interests. *E.g.*, *In re Marriage of B.K. and B.P.*, 873 N.E.2d 729, 737 (Ind. Ct. App. 2007) (citing *Barger v. Pate*, 831 N.E.2d 758, 762 (Ind. Ct. App. 2005)), *trans. denied*.

[13] Here, Father contends that a substantial change has occurred, making modification of physical custody to him in the children's best interests. Specifically, he alleges the following "substantial changes:" (1) Mother provided inadequate care for the children in the mornings after she left for work and before the children went to school; (2) M.X.K.'s school grades suffered because he was required to "act as the defacto parent" for himself and his two siblings in the mornings; and (3) Mother failed to enroll the children in extra-

curricular activities. Appellant's Br. at 11. In support of these contentions, Father cites evidence he presented and asks us to give his evidence more weight than the evidence cited by the trial court. However, we will not reweigh the evidence. *Kappel*, 979 N.E.2d at 652.

[14] Rather, looking at the evidence supporting the judgment, as we must, we find the evidence supported the trial court's findings and its findings support its judgment. The evidence—including the March 9, 2017, GAL report— established the following: that Mother's father/children's maternal grandfather took care of the children in the mornings after Mother left for work and before the children went to school; that M.X.K.'s grades for the first quarter of the 2016-2017 school year were one A, four Bs, and two Cs, and his teachers believed he was working up to his potential in most classes; Father had a difficult time taking care of the three children alone, i.e., without help from his most recent former wife; Father "would talk negatively about Mother any chance he could do so," (Appellee's App. at 60); Father told the children that Mother was a "horrible mother and a liar," (*Id.*); Father "continued to speak negatively about Mother in front of the children, and attempted to have the children pick him over their Mother," (*Id*. at 61); M.R.K. and V.K. had satisfactory school performances; none of the children expressed a desire to be in the primary physical custody of Father; the children were well-adjusted to their schools, community, and homes; and the children were engaged in the 4-H club, basketball, and wrestling. The GAL—who interviewed the parties, the children, Father's most recent ex-wife, and the children's teachers—concluded

in his report that it was not in the children's best interests to modify custody of the children. This evidence supports the trial court's factual findings, and those findings support the court's conclusions that there is no substantial change to justify modification of primary physical custody from Mother to Father, and that modification of custody would not be in the children's best interests.

## Ruling on Contempt Motion

[15] Father erroneously asserts that the trial court failed to rule on his motion to hold Mother in contempt for failing to communicate with him about one of M.X.K.'s physicals and the children's extra-curricular activities. The trial court specifically denied that motion in its October 31, 2017 order.

[16] To the extent Father claims the order denying his motion was erroneous, he has waived that argument by failing to cite legal authority and references to the record. Ind. Appellate Rule 46(A)(8). Waiver notwithstanding, the order is not clearly erroneous. The joint custody agreement did not require that Mother communicate with Father about every doctor appointment and extra-curricular activity. Appellant's App. at 30-34. Moreover, the evidence indicates that Mother did communicate with Father about the children's extra-curricular activities. Appellee's App. at 49-50. The trial court did not err in denying Father's contempt motion.

## Child Support Order

[17] Finally, Father maintains that the trial court erred in its calculation of the child support. A trial court's calculation is presumptively valid, and we reverse it

only if it is clearly erroneous. *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015). On review, we consider only evidence and reasonable inferences favorable to the judgment. *Id.*

[18] Father contends that the trial court erred in entering a child support order because it "did not have the requisite information to calculate or modify child support." Appellant's Br. at 22. However, the child support order was based on Mother's Exhibits 1 and 2, which contained both Mother's and Father's W-2 tax forms for the year 2015, and a child support worksheet. Those exhibits were admitted into evidence without Father's objection. Tr. Vol. II at 217-18. And Father directs us to no other evidence of income that was submitted to the court.[2] Therefore, the evidence favorable to the judgment supports the trial court's child support order. The trial court did not clearly err.

# Conclusion

[19] The trial court did not clearly err in denying the motions to modify custody and for contempt of court, and it did not clearly err in calculating the amount of child support.

---

[2] We note that the trial court did order the parties to confer regarding whether the child support order should be modified in the future. And it noted that the parties could "schedule further proceedings" on that issue if they could not reach an agreement. Thus, if Father has evidence supporting a modification of the child support order, he may file a petition to modify child support and present his evidence to the trial court in new proceedings.

Affirmed.

Crone, J., and Brown, J., concur.