## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 21 2018, 8:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Sean C. Lemieux
Lemieux Law
Indianapolis, Indiana

Vanessa Lopez Aguilera
Lopez Law Office, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Rebecca Eimerman
Sarah Trostle
Eimerman Law
Zionsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cory D. Crumpton, <br> *Appellant-Respondent,* <br><br> v. <br><br> Fallon (Crumpton) Fernandes, <br> *Appellee-Petitioner* | August 21, 2018 <br><br> Court of Appeals Case No. <br> 17A-DR-3032 <br><br> Appeal from the Hendricks <br> Superior Court <br><br> The Honorable Karen M. Love, <br> Judge <br><br> Trial Court Cause No. <br> 32D03-1302-DR-106 |

**Vaidik, Chief Judge.**

# Case Summary

Cory Crumpton ("Husband") appeals the trial court's order requiring him to pay $11,250 to his ex-wife, Fallon Fernandes ("Wife"), in relation to a daycare that they operated when they were married and that was to be sold after their divorce. Husband contends that the trial court's decision is not supported by the evidence presented. We agree and reverse.

# Facts and Procedural History

Husband and Wife married each other in 2010 and divorced in March 2014. One of their marital assets was a business they operated together, Kiddieville Day Care, and the divorce decree provided that the daycare "shall be sold and all debts paid" and that "each party shall receive half of the net proceeds." Appellant's App. Vol. II p. 42. Husband was given the responsibility to operate the daycare until the sale. A few months after the divorce, however, the State of Indiana shut down the daycare for violations relating to cribs and unsanitary conditions. Several months after that, Jacqueline Murray, who had been the director of Kiddieville, opened her own daycare (called Miracles and Blessings) in the building formerly occupied by Kiddieville.

In July 2016, Wife filed a petition claiming that the divorce decree required Husband to sell the daycare, that he had failed to do so, and that he should therefore be found in contempt. (Husband doesn't dispute Mother's claim that the divorce decree placed on him the burden of selling the daycare, even though

the decree said only that the daycare "shall be sold.")  At the hearing on the petition, Husband testified that he had been negotiating a sale of the daycare to Murray when the State shut down the business.  Husband anticipated that he would be paid by receiving "[f]ive percent of enrollment" for six to twelve months.  Tr. Vol. III pp. 89-90.  However, both Husband and Murray testified that the sale was never finalized because of the shutdown by the State.  Both further testified that Murray's opening of a daycare business several months later was an arrangement between Murray and the owner/landlord of the building, not the result of a sale by Husband to Murray.

[4]  Wife presented evidence that Husband made over $30,000 in deposits to his personal bank accounts between September 2014 and December 2016.  Husband was unable to identify the source of $19,899.84 in deposits.  Husband acknowledged selling a van that belonged to the daycare for $3500, but he said that amount was exceeded by the remaining debt on the van ($5000), which he said he paid.

[5]  In a written order issued after the hearing, the trial court did not find Husband in contempt for failing to sell the daycare but nonetheless ordered him to pay $11,250 to Wife:

> 15. [Husband] is not credible when money is an issue.
> [Husband] is not credible concerning the cash he received and
> pocketed from Kiddieville Day Care after the divorce.
> [Husband] could not account for $19,899.84 of cash deposits to
> his checking account.  Court finds that $16,000.00 of that was
> from Kiddieville Day Care and [Husband] owes [Wife] $8,000.00
> of that amount.

\* \* \* \*

19. On the issue of Kiddieville Day Care, the Court does not have sufficient evidence to assign a value for the Kiddieville Day Care. The State of Indiana shut the daycare down on 07/05/2014. [Husband] did sell a van belonging to the daycare for which he received $6,500. The Court awards [Wife] a judgment for $11,250.00 ([$3,250.00] and $8,000.00 cash proceeds) against [Husband] . . . .

Appellant's App. Vol. II pp. 31-32, 34.

[6] Husband now appeals.

# Discussion and Decision

[7] Husband contends that the two findings of fact underlying the trial court's award of $11,250 to Wife—the finding that Husband received $16,000 from the daycare after the divorce and the finding that he sold a van belonging to the daycare for $6500—are incorrect. We will set aside a trial court's finding of fact only if it is clearly erroneous, i.e., when the record lacks any evidence or reasonable inferences from the evidence to support it. *Steele-Giri v. Steele*, 51 N.E.3d 119, 125 (Ind. 2016). In making this determination, we consider only the evidence most favorable to the trial court's decision and the reasonable inferences therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. *Breeden v. Breeden*, 678 N.E.2d 423, 425 (Ind. Ct. App. 1997).

[8]     The trial court based its finding that Husband received $16,000 from the daycare after the divorce on the fact that he "could not account for $19,899.84 of cash deposits to his checking account." Husband acknowledges that he did not identify "the source of all deposits to his bank account" but contends that the record is "devoid of evidence" that any of that money, let alone $16,000, was received in connection with the daycare. Appellant's Br. p. 12. While we can understand why the trial court doubted Husband's credibility when it comes to money, we are compelled to agree with Husband's argument on this point. Wife's position on appeal is that the trial court was free to disbelieve Husband's testimony that he couldn't recall the source of some of the deposits into his bank accounts and "free to infer" that $16,000 worth of deposits "were made from monies he received from the Kiddieville Day [C]are." Appellee's Br. p. 10. We agree with the first proposition—Husband's claim that he doesn't remember the origin of nearly $20,000 in deposits is certainly dubious. But the second proposition doesn't follow from the first. That is, the fact that the trial court disbelieved Husband's testimony that the deposits **didn't** come from a sale of the daycare does not by itself support a finding that the deposits **did** come from a sale of the daycare. As the United States Supreme Court has noted, "discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). Wife does not direct us to any affirmative evidence that the

daycare was sold for, or that it was worth, $16,000. Therefore, we must conclude that the trial court's finding in this regard is clearly erroneous.[1]

[9] The same is true of the trial court's finding that Husband sold a daycare van for $6500. To be sure, there is evidence that the daycare owned as many as three vans at the time of the divorce. However, Mother does not direct us to any evidence that any of those vans was sold for (or worth) $6500. The only evidence of a van being sold came from Husband himself, who testified that he sold a van for $3500 but that he also paid off $5000 in associated debt.

[10] While we appreciate the trial court's desire and efforts to bring some clarity to a murky situation, the evidence simply does not support the factual findings underlying its award of $11,250 to Wife. As such, that award must be set aside.

[11] Reversed.

Pyle, J., and Barnes, Sr. J., concur.

---

[1] In the facts section of her brief, Wife discusses testimony by Murray that Husband had access to the daycare even after it was shut down and that "all of the original furnishings and equipment were gone" when she went to re-open the daycare. Appellee's Br. p. 6. However, Wife makes no mention of the value of those items and does not otherwise assert that Murray's testimony on this point supports the trial court's monetary award. She focuses solely on her belief that Husband sold the business to Murray.