## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2020, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT S.D.

Trenna S. Parker
Noblesville, Indiana

ATTORNEY FOR APPELLANT M.S.

Michael C. Price
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of J.S. (Child in Need of Services): | September 28, 2020 |
| | Court of Appeals Case No. 20A-JC-958 |
| S.D. (Mother) and M.S. (Father), | Appeal from the Hamilton Superior Court |
| *Appellants-Respondents,* | The Honorable Michael A. Casati, Judge |
| v. | The Honorable Todd L. Ruetz, Magistrate |
| The Indiana Department of Child Services, | Trial Court Cause No. 29D01-2001-JC-204 |
| *Appellee-Petitioner.* | |

**Bailey, Judge.**

# Case Summary

[1] S.D. ("Mother") and M.S. ("Father") appeal the order adjudicating their son, J.S. ("Child"), a Child in Need of Services ("CHINS"). Mother and Father challenge the sufficiency of the evidence supporting the CHINS adjudication.

[2] We affirm.

# Facts and Procedural History

[3] In January 2020, when Child was seven years old, Mother, Father, and Child traveled by car from California to Indiana. The purpose of the trip was to visit Mother's friend, A.S., and explore the possibility of moving to Indiana. When the family arrived, Child stayed with A.S. Mother and Father initially stayed in their car and later obtained a hotel room. A.S. noticed that Child did not know how to brush his teeth and she was concerned about the condition of his teeth.

[4] After about a week in Indiana, Mother informed A.S. of plans to travel back with Child. On January 28, 2020—while Child was in the care of A.S.—the Hamilton County Department of Child Services ("DCS") received a report that Child was the victim of neglect. Child was evaluated at a hospital, which led to concerns about severe tooth decay. The next day, DCS filed a petition alleging that Child was a CHINS, in part, because Child needed "immediate dental care due to dental care neglect and serious tooth decay." Mother's App. Vol. II at 14. During the pendency of the proceedings, Child remained in A.S.'s care.

[5] At an ensuing fact-finding hearing, the trial court heard evidence that Mother and Father received disability payments and that Child's dental care was largely covered under California's Medi-Cal program. There was also evidence that Mother and Father had last taken Child to a dentist in June 2019. That dentist testified by phone, explaining that she did not have concerns about tooth decay from that exam. DCS presented evidence that, after its involvement, Child was seen by a pediatric dentist in Indiana. The pediatric dentist testified that Child had "obvious rampant [tooth] decay" that "was readily apparent" and visible to the naked eye. Tr. Vol. 2 at 84. The dentist opined that the decay posed "a high likelihood" of causing "infection into the [jawbone] by where the tooth roots are" and that this type of infection could be life threatening. *Id.* at 85-86. According to the dentist, Child's tooth decay "is suggestive that there has been neglect." *Id.* at 86. The dentist opined that "[e]ither this decay has been present and ongoing for quite some time and not treated, or if [Child] presented fine in July 2019,[1] then there's been a drastic change in the conditions of the oral care. It has to be one of the two." *Id.* at 92. The dentist opined that, of Child's six adult teeth, four needed fillings. The dentist further opined that, of Child's eighteen baby teeth, twelve to fourteen needed some form of treatment.

[6] The trial court later entered written findings. Among the findings was that "Child's teeth are severely decayed" and "Child demonstrated a lack of knowledge as to how to brush his teeth[.]" Mother's App. Vol. II at 39. The

---

[1] Although the dentist referred to July 2019, there is no dispute that Child last saw a dentist in June 2019.

court found that Mother and Father had "significantly neglected . . . Child's dental health" and that Child's "physical health is seriously endangered[.]" *Id.* The court ultimately adjudicated Child a CHINS. Following a dispositional hearing, the court entered an order requiring that the "dental work . . . be performed" and that Mother and Father participate in services. *Id.* at 41-42.

[7] Mother and Father now appeal.

# Discussion and Decision

[8] The trial court adjudicated Child a CHINS under Indiana Code Section 31-34-1-1, which provides as follows:

> A child is a [CHINS] if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>
>> (A) when the parent, guardian, or custodian is financially able to do so; or
>>
>> (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and
>
> (2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Our Supreme Court has synthesized this statutory language, explaining that a CHINS adjudication requires proof of "three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

[9] DCS must prove by a preponderance of the evidence that a child is a CHINS. Ind. Code § 31-34-12-3; *In re Eq.W.*, 124 N.E.3d 1201, 1208 (Ind. 2019). Here, the CHINS order included special findings—but neither party requested findings and "no statute expressly requires formal findings in a CHINS fact-finding order." *In re S.D.*, 2 N.E.3d at 1287. The instant findings are therefore *sua sponte* findings that control only the issues they cover, with a general-judgment standard controlling any "issues . . . not covered by such findings." Ind. Trial Rule 52(D). Where a general-judgment standard applies, we affirm if the judgment can be sustained on any legal theory supported by the evidence. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). As to matters covered by the findings, we will not "set aside the findings or judgment unless clearly erroneous." T.R. 52(A). Under this standard, we will affirm if the evidence supports the findings and the findings support the judgment. *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). Moreover, in conducting our appellate review,

we will not reweigh evidence, *id.* at 124, and we must give "due regard" to the opportunity of the trial court to judge the credibility of witnesses, T.R. 52(A).

# Neglect

[10] Focusing on the first subsection of the foregoing CHINS statute, Mother and Father challenge the sufficiency of the evidence of neglect. Father directs us to evidence that a dental exam should be conducted every six months and that only seven or so months had passed since Child's last exam. Moreover, Mother and Father assert that the previous exam was normal and that they should be permitted to rely on that exam. Father also points out that a trained dentist used x-rays and special tools to understand the scope of Child's tooth decay. According to Father, the trial court essentially required that Mother and Father have expert knowledge of dental health rather than lay parental knowledge. Father also directs us to favorable evidence that Child had not reported pain and that the hospital nurse might not have called DCS based on the decay. Father also points out that Child saw a physician in December 2018—about a year before DCS intervention—and there is no indication of dental concerns at that time. Father also notes that, after the family arrived in Indiana, A.S. did not immediately take Child to a dentist or immediately report concerns to DCS.

[11] At bottom, Mother's and Father's arguments amount to requests to reweigh the evidence, which we must decline. Ultimately, there is evidence indicating that Child presented normal in June 2019 and had a drastic decline in dental health that warranted intervention. Although the pediatric dentist used tools to assess

the scope of the tooth decay, there is nevertheless evidence that the decay was "obvious" and "rampant"—visible to the naked eye. Tr. Vol. 2 at 84. There is also evidence that Child lacked the basic skills to properly care for his teeth.

[12] We disagree with Father's contention that requiring a parent to investigate the changing appearance of teeth is tantamount to requiring expert knowledge. Further, we are not persuaded by Father's argument that *In re A.H.* militates toward reversing the instant CHINS adjudication. 58 N.E.3d 951 (Ind. Ct. App. 2016). In that case, a parent pursued various treatment options to address a child's mental-health needs. *See id.* at 954-55. Despite the treatment, the child continued to need mental-health care and she was adjudicated a CHINS based on that need. *See id.* This Court reversed, reasoning that a parent is not neglectful just because a sick child is not responding to medical care. *See id.* at 955. Here, however, the evidence indicates that Mother and Father failed to intervene and seek care for Child despite visible signs of declining dental health.

[13] We conclude that there is sufficient evidence that Mother and Father neglected Child's dental health, thereby seriously endangering Child due to the risk of infection. We ultimately identify sufficient evidence supporting the elements set forth in the first subsection of the CHINS statute. *See* I.C. § 31-34-1-1(1).

## Coercive Intervention

[14] As to the second subsection of the CHINS statute, Mother and Father do not dispute that Child needs dental care. Rather, they argue that there is no need for the court's coercive intervention. "When determining CHINS status under

[Indiana Code] Section 31-34-1-1, particularly the 'coercive intervention' element, courts 'should consider the family's condition not just when the case was filed, but also when it is heard.'" *In re D.J.*, 68 N.E.3d 574, 580-81 (Ind. 2017) (quoting *In re S.D.*, 2 N.E.3d at 1290). This approach "avoids punishing parents for past mistakes when they have already corrected them." *Id.*

[15] Mother and Father direct us to favorable evidence indicating that they wanted to return to California and would pursue dental treatment when they returned. Mother points out that, despite Child's fear of dental procedures, Mother and Father had taken Child to the dentist. Mother argues that DCS should have spent more time investigating Child's prior care. As to Father, he argues that Child "was not in [parental] care at any point after he was taken to the hospital" and that placing Child in parental care would have "test[ed] whether [Mother and Father] would or would not provide [medical] care." Father's Br. at 20. Both Mother and Father direct us to *In re S.D.* for the proposition that "[n]ot every endangered child is a [CHINS], permitting the State's *parens patriae* intrusion into the ordinarily private sphere of the family." 2 N.E.3d at 1287.

[16] Father points out that Mother and Father complied with information requests and went to the hospital when Child was taken there. According to Father, their "habit to follow through on items requested for [Child] or by the State is consistent" and "[t]here is no evidence that, given the chance and opportunity, the parents would not have followed through similarly in having [Child] seen by their family dentist or some other provider." Father's Br. at 21. Father also asserts that DCS intervention impeded treatment because Medi-Cal would have

covered the treatment if the family was "only allowed to go home." *Id.* at 22. Father likens the circumstances to those in *In re S.D.*, where our Supreme Court reversed in part by attributing delay in progress to DCS. 2 N.E.3d at 1289-90.

[17] Focusing on favorable evidence, Mother and Father essentially argue that they were eager and ready to address Child's medical needs. Along these lines, Father directs us to a string of cases standing for the general proposition that, where a parent faces struggles but is equipped to attend to a child's needs, the Child is not a CHINS. *See* Br. of Father at 18-19 (citing *In re S.D.*, 2 N.E.3d at 1285-86; *In re M.K.*, 964 N.E.2d 240 (Ind. Ct. App. 2012); *In re S.K.*, 57 N.E.3d 878 (Ind. Ct. App. 2016); and *In re S.M.*, 45 N.E.3d 1252 (Ind. Ct. App. 2015)).

[18] First, we disagree with Father's suggestion that Child should have been placed with Mother and Father so they could demonstrate attention to Child's needs. As our Supreme Court has explained, "the purpose of a CHINS adjudication is to protect children, not punish parents." *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). Here, Child's dental needs arose through six months of neglect, and the court need not wait for Mother and Father to demonstrate a different pattern of dental care. *See generally In re R.S.*, 987 N.E.2d 155, 158 (Ind. Ct. App. 2013) (noting that a court "need not wait until a tragedy occurs to intervene" through a CHINS adjudication). Moreover, although there was favorable evidence that Mother and Father would address Child's immediate needs in California, it is not as though treatment alone would protect Child. Rather, in addition to needing immediate dental care, Child needs parents who are committed to

instilling a regimen of dental hygiene and who are attuned to Child's ongoing health needs—*i.e.*, prepared to take proactive measures to avoid future harm.

[19] Ultimately, we are not at liberty to reweigh the evidence. In light of the evidence that Child was endangered due to the cumulative effect of six months of parental neglect, we cannot say that the court clearly erred by determining that Child's needs were unlikely to be met without the coercion of the court.

[20] All in all, we conclude that there is sufficient evidence that Child is a CHINS.[2]

[21] Affirmed.

Vaidik, J., and Weissmann, J., concur.

---

[2] Having concluded that the evidence is sufficient to support a CHINS adjudication on grounds related to Child's dental health, we need not address arguments regarding any other grounds. *See, e.g.*, *In re B.J.*, 879 N.E.2d 7, 20 (Ind. Ct. App. 2008) (regarding a finding as surplusage where there was "evidence sufficient to support the trial court's ultimate findings on the elements necessary to sustain the judgment"), *trans. denied*.