FILED

Feb 02 2024, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Jonathan M. Young
Law Office of Jonathan M. Young, P.C.
Newburgh, Indiana

ATTORNEY FOR INTERVENOR
APPELLEE RYAN DEJEAN

Laurie Baiden Bumb
Bumb Law Office, LLC
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bryan J. Jackson,

*Appellant-Respondent,*

v.

Samantha DeJean,

*Appellee-Petitioner,*

Ryan DeJean,

*Appellee-Intervenor.*

February 2, 2024

Court of Appeals Case No.
23A-DC-1410

Appeal from the Warrick Superior
Court

The Honorable Krista Hamby
Weiberg, Judge

Trial Court Cause Nos.
87D01-2101-DC-97
87D02-2002-JP-26

**Opinion by Judge Mathias**
Judges Tavitas and Foley concur.

**Mathias, Judge.**

[1] B.J., the biological father of M.D., filed a petition to establish paternity to M.D., who was born to S.D. ("Mother") during her marriage to R.D. After S.D.'s marriage to R.D. was dissolved, B.J. and Mother married and had another child, J.J. Mother later filed a petition to dissolve her marriage to B.J. R.D., Mother's former husband and the putative father of M.D., was allowed to intervene in B.J.'s paternity action.

[2] In B.J.'s separate paternity action concerning M.D., the trial court denied R.D. any custodial or visitation rights to M.D., awarded Mother "modified legal custody" of M.D., and awarded B.J. parenting time with M.D. In the dissolution action between Mother and B.J., Mother was awarded custody of J.J. with B.J. having parenting time. Shortly thereafter, the trial judge resigned. Mother and R.D. then filed motions to reconsider and to correct error in Mother's dissolution action with B.J. and in the paternity action, which were considered by the successor trial judge.

[3] The successor trial judge reviewed the transcripts and issued modified orders in both cases. The subsequent order in the paternity case awarded joint custody of M.D. to Mother and R.D. and allowed those parties to determine B.J.'s parenting time. In the dissolution proceeding between Mother and B.J., the successor trial judge reduced B.J.'s parenting time with J.J.

[4] B.J. appeals, raising the following dispositive issue: whether the successor trial judge erred when the judge reweighed the evidence and the credibility of the

witnesses in issuing her orders granting Mother's and R.D.'s motions to correct error and reconsider.

[5] Concluding that the trial court abused its discretion, we reverse and remand for proceedings not inconsistent with this opinion.

## Facts and Procedural History

[6] Mother and R.D. were married for seven years and they had two daughters. During the marriage, Mother became pregnant with M.D., a son, who was born in October 2018. R.D. believed he was M.D.'s biological father but shortly after M.D.'s birth, R.D. took a paternity test and learned that he was not M.D.'s biological father.

[7] Mother and R.D.'s marriage was dissolved in November 2019. In the dissolution decree, the parties agreed that R.D. was not M.D.'s biological father.

[8] In Fall 2019, Mother, her two daughters and M.D. moved into B.J.'s residence. On February 12, 2020, B.J. (hereinafter "Father") filed a petition to establish paternity to M.D. Mother and Father were married in July 2020 and had another child, J.J., who was born in October 2020.

[9] On January 20, 2021, Mother filed a petition to dissolve her marriage to Father.[1] Shortly thereafter, Mother and R.D. modified their dissolution decree

---

[1] During Mother's and Father's marriage, Father's oldest child, S.J., alleged that Father molested her.

and agreed that M.D. was a child born of the marriage, and the trial court approved of their modification of the decree. Thereafter, R.D. began to pay child support for M.D.

[10] The trial court consolidated the paternity case and Mother and Father's dissolution case for the purpose of conducting hearings. However, each case retained its own case number. In August, R.D. filed a motion to intervene in both cases and argued that he was M.D.'s legal and/or de facto custodian. The trial court granted R.D.'s motion to intervene in the paternity case.

[11] The court held evidentiary hearings across several days in early 2022. The parties presented conflicting evidence concerning Father's and R.D.'s roles in providing care and support for M.D. Mother presented evidence that Father had not seen M.D. and J.J. for several months, while Father claimed that Mother had refused to allow Father to have parenting time with either child.

[12] On June 8, 2022, the trial court issued a consolidated final order in both cases. With respect to the issues presented in this appeal, the trial court found:

> 1. This Order is in the best interest of the children.
>
> ***
>
> 4. The Mother shall have modified joint legal custody of the minor children, [M.D. and J.J.]. The Mother shall consult and discuss major decisions regarding the minor children concerning the upbringing of the children, including decisions regarding education, healthcare, religion, and extracurricular activities. In the event of a dispute between the parties, the Mother's decision

regarding the children shall be final until further order of the court. Mother shall consult and discuss major decisions regarding the child with the Father, and shall only make a major decision regarding the children after significant and meaningful communication between the Father and the Mother. Any decision by the Mother regarding the minor child is subject to review by the Court.

5. The Father shall have Parenting Time with the children one time per week for a period of up to three (3) hours, supervised by a third-party supervisor such as Mike Jones or similar. These visits can occur at a place as determined by the Father. The Father shall pay for the supervisor. The visits shall occur on Saturdays unless the Father has to work on Saturday and as otherwise agreed to between the parties.

6. The Father shall be allowed to attend school functions, extra-curricular activities, and other functions involving the minor children that occur at school or other businesses/entities without the necessity of a supervised parenting time provider present.

***

23. [R.D.] shall have no custody or visitation rights to the minor child [M.D.].

Appellant's App. pp. 66-69. The court also ordered Father to pay child support in the amount of $207 per week. Finally, the court concluded that the de facto custodian statute did not give the court authority to grant visitation between R.D. and M.D. *Id*. at 69. Shortly after issuing the final orders in this case, the trial judge resigned.

[13] Before the successor judge was appointed, Mother and R.D. filed joint motions to reconsider and to correct error. They argued that the trial court's ruling was not supported by the evidence presented, and that the trial court erred as a matter of law when the court concluded that R.D. was not M.D.'s de facto custodian. Mother and R.D. claimed that the evidence established awarding joint legal and physical custody of M.D. to Mother and R.D. was in M.D.'s best interests. Father filed a timely response, and the trial court scheduled a hearing on the motion.

[14] The successor judge was appointed on November 28, 2022. The new judge held a hearing on Mother's and R.D.'s motions on January 11, 2023. The parties informed the judge that the basis of the motions was whether the originally presented evidence supported the judgment. The court told the parties it would listen to the recorded hearings before ruling on the motions. Tr. Vol. 3, pp. 170-71, 174.

[15] The court held another hearing on April 5. At that hearing, the court stated that it had listened to the original evidentiary hearings, and the court then allowed the parties to present argument on the pending motions. Father argued that the court should deny the motions because the prior trial judge was in a better position to weigh the evidence after observing the demeanor of the witnesses. *Id*. at 201.

[16] On May 26, the trial court issued its order granting Mother's and R.D.'s motions to reconsider and correct error in the paternity case. In its order, the

court initially addressed the fact that it did not preside over the evidentiary hearings but had listened to the recorded evidentiary hearings. After listening to the hearings, the court concluded that a new trial was not necessary. Appellant's App. p. 30. The court then issued its own findings of fact, which are set forth below in relevant part:

> 3. Following [M.D.'s] birth, R.D. believed he was the biological father of the child, due in part to the deception of both [Mother] and [Father], at [Father's] insistence, that [R.D.] be convinced that he was the child's father.
>
> 4. [R.D.] and Mother have jointly and consistently provided the primary care for [M.D.] since his birth. When not residing together, they have alternated weeks with [M.D.] and [R.D.] has cared for [M.D.] many other times.
>
> 5. [Father] has provided minimal care for [M.D.].
>
> 6. [Father] had no contact with [M.D.] at all until he was 6 months old. [Father] exercised no parenting time and had no contact with the child for extended periods of time, including from January, 2021 through at least June, 2022, and he made no effort to see [M.D.].
>
> 7. [R.D.] has been the primary provider for [M.D.'s] needs since birth. He has provided for [M.D.'s] housing and he assisted [Mother] financially to obtain her own home after [Father] evicted [Mother] and the children out of his home.
>
> 8. [R.D.] has provided for [M.D.'s] other needs, including food, clothing, health insurance, health care expenses, child care and other expenses. He also pays weekly child support for [M.D.]. [Mother] has contributed financially to [M.D.'s] needs as her income would allow. [Father] has provided very little for [M.D.] and does not pay any child support for [M.D.], despite earning a fairly substantial income.

9. Before [M.D.'s] birth, [Father] made it clear that he did not want to be [M.D.'s] father. [Father] acquiesced in [R.D.'s] parental relationship with [M.D.] since [M.D.'s] birth. [Father] did not request the amendment of [M.D.'s] birth certificate that showed [R.D.] as the father. [Father] did not request that [M.D.] be given his last name. [Father] did not object to [R.D.] caring for the child in alternate weeks, even during his marriage to [Mother]. [Father] did not object to [R.D.] coming to his home during [Mother's] parenting time on alternate weeks to see [M.D.] and [R.D.'s] other children. [Father] did not intervene or correct [M.D.] when he called [R.D.] "Daddy". [Father] acquiesced in [R.D.] being the primary provider for [M.D.'s] needs and did not contribute or offer to contribute to the support of [M.D.].

10. [R.D.] and [M.D.] have a very close and loving relationship. The emotional bond between them has grown even stronger over time. [M.D.] also has close and loving relationships with his Mother, . . . his siblings, [R.D.'s] parents and other family members, and [Mother's] family members. [R.D.] provides stability and security for [M.D.]. [R.D.'s] love, devotion, and care for [M.D.] has never wavered. He has continued to provide and love [M.D.] without interruption and without change.

11. [Father] has no relationship with [M.D.]. His involvement in [M.D.'s] life has been minimal at best. [Father's] family members are not close to [M.D.] and would focus on [Father's] other child, [S.J.], and ignore [M.D.] during his marriage to [Mother].

12. [Father] has been determined to have sexually abused his daughter, [S.J.], which [sic] she was 6 years old. The Warrick County Department of Child Services substantiated these allegations and [Father] failed a polygraph test administered by the Indiana State Police. [Father] agreed to participate in a therapeutic program for sex offenders, and his parenting time with [S.J.] and his younger child with [Mother], [J.J.], w[as] limited and supervised. [Father] exercised such parenting time inconsistently and sporadically.

13. [Father] is not a fit and proper person to have custodial rights with respect to [M.D.], who will be 5 years old in October 2023.

14. The trial court erred in its June 8, 2022 Order by ruling that [R.D.] has no custody and visitation rights to [M.D.]. The trial court erroneously based its ruling on the inaccurate premise that [R.D.] sought visitation rights with [M.D.] The evidence is undisputed that [R.D.] has consistently requested that he and [Mother] share equal joint 50-50 legal and physical custody of [M.D.], as they have done since his birth. The statute and case law cited in the June 8, 2022 Order in support of this ruling are not relevant or applicable to the facts of this case.

Appellant's App. pp. 30-33.

[17] The court also found that R.D. had met the statutory criteria to be considered M.D.'s de facto custodian. *Id.* at 33. The court concluded that it was in M.D.'s best interests to award equal legal and physical custody of M.D. to Mother and R.D. *Id.* at 36. Finally, the court found that Father would not be awarded any custody rights to M.D. but would have "such supervised parenting time with [M.D.] as may be agreed upon by [Mother and R.D.]" *Id.* at 36-37.

[18] On June 1, the court issued a separate order granting Mother's post-trial motion in Mother's and Father's dissolution proceeding. The court reduced Father's parenting time with J.J. from three hours of supervised time per week to one hour every other week.

[19] Father now appeals. R.D. filed an Appellee's brief, but Mother does not participate in this appeal.

## Discussion and Decision

[20] Father presents the following dispositive issue for our review: whether the successor trial judge erred by reweighing the evidence and the credibility of the witnesses when ruling on the parties' post-trial motions. In the June 8, 2022, order, the original trial court judge did not issue factual findings in support of the judgment, but the judge specifically found that its custody decision was in the best interest of M.D. and J.J. Appellant's App. p. 66. Mother and R.D. filed motions to reconsider and to correct error. In part, Mother and R.D. claimed that the evidence established awarding joint legal and physical custody of M.D. to Mother and R.D. was in M.D.'s best interests. Mother also challenged the trial court's decision to award Father parenting time with J.J.

[21] The successor judge informed the parties that she would listen to the evidence presented during the original evidentiary hearings that the first trial court judge had presided over. Indiana Trial Rule 63(A) provides that

> The judge who presides at the trial of a cause or a hearing at which evidence is received shall, if available, hear motions and make all decisions and rulings required to be made by the court relating to the evidence and the conduct of the trial or hearing after the trial or hearing is concluded. *If the judge before whom the trial or hearing was held is not available by reason of death, sickness, absence or unwillingness to act, then any other judge regularly sitting in the judicial circuit or assigned to the cause may perform any of the duties to be performed by the court; but if he is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial or new hearing, in whole or in part.*

(Emphasis added.)

[22] Citing Rule 63(A), Father acknowledges that a new trial is not required in every case. However, Father directs our attention to *Urbanational Developers, Inc., et al. v Shamrock Engineering, Inc.*, 175 Ind. App. 416, 372 N.E.2d 742 (1978), wherein our court considered the problem that arises under Trial Rule 63(A) when "the successor judge is confronted with issues involving the trial judge's familiarity with the evidence." *Id.* at 420, 372 N.E.2d at 746. In *Urbanational*, our court observed that, in many cases, the successor judge may resolve post-trial issues and motions by reviewing the trial transcripts. *Id.* at 420-21, 372 N.E.2d at 746. On the other hand, a successor judge may be "ill-equipped to perform the functions of the regular trial judge" when the successor judge "is confronted with an issue which requires for its resolution a determination of the credibility of witnesses or the weight to be accorded certain evidence." *Id.* at 421, 773 N.E.2d at 746.

[23] In the latter circumstance, Rule 63(A) allows the successor judge to grant a new trial or hearing, in whole or in part, when the judge believes he or she cannot perform the duties of the regular trial judge because he or she did not preside at trial. *Id.* Our court observed that,

> [w]hen a successor judge attempts to resolve questions of credibility and weight of evidence without having had an opportunity to hear the evidence and observe the demeanor of witnesses, he [or she] is depriving a party of an essential element of the trial process. Such an undertaking by the successor judge is against the logic and effect of the facts and circumstances before

the court and amounts to an abuse of discretion. To hold otherwise would be to grant a power of review to the successor judge that is not even claimed by appellate courts.

*Id.* (citation omitted).

[24] More recently, in *In re I.P.*, 5 N.E.3d 750, 752 (Ind. 2014), our supreme court held that, where the magistrate who presided over a termination-of-parental-rights fact-finding hearing resigned before reporting its findings and conclusions to the trial judge, the trial court was required to hold a new evidentiary hearing. The trial court's failure to do so violated the parent's due process rights. *Id.* In particular, our supreme court noted:

> A party is entitled to a determination of the issues by the judge who heard the evidence, and, where a case is tried to a judge who resigns before determining the issues, a successor judge cannot decide the issues or enter findings without a trial de novo. When a successor judge who did not hear the evidence or observe the witnesses' demeanor attempts to weigh evidence and make credibility determinations, the judge "is depriving a party of an essential element of the trial process."

> It is precisely because the judge or magistrate presiding at a termination hearing has a superior vantage point for assessing witness credibility and weighing evidence that we give great deference to a trial court's decision to terminate a parent's rights. But in this case, the magistrate who reported recommended findings and conclusions to the judge did not hear the evidence or observe the witnesses firsthand.

*Id.* at 752 (citations omitted). Although our supreme court's analysis was not under Trial Rule 63(A) as there was no final judgment issued by the trial judge, the violation to the parent's due process rights occurred for the same reasons

discussed in our court's *Urbanational* decision and is entirely consistent with the logic and policy underlying Rule 63(A).

[25] Father's claim of error must also be considered in light of our well-established preference in Indiana for granting latitude and deference to our trial judges in family law matters because the judge presiding at a family law evidentiary hearing has a superior vantage point for assessing witness credibility and weighing evidence. *E.g.*, *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). Our supreme court has also observed that reviewing courts "'are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *Id.* (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

[26] Father raised these precise concerns with the successor trial judge because the judge had only reviewed the transcript of the hearings. Tr. Vol. 3, p. 201. For example, the parties had presented conflicting evidence at the original evidentiary hearings with respect to the care and support Father had provided during M.D.'s life after the parties determined that R.D. was not M.D.'s biological father. The parties also presented conflicting evidence as to R.D.'s role in M.D.'s life while Father and Mother resided together before and during their marriage. While Mother presented evidence that Father had not seen either M.D. or J.J. for several months prior to the evidentiary hearings, Father testified that Mother refused to allow him to see the children while the paternity and dissolution matters were pending.

[27] Mother's and R.D.'s post-trial motions argued that the trial court's original order in the paternity and dissolution hearings was not supported by the evidence. In ruling on the motions, the successor judge improperly reweighed the evidence and improperly reassessed the credibility of the witnesses based on her reading of the transcript. The successor judge did not hold a new evidentiary hearing in whole or in part, and, thus, she did not have an opportunity to hear the evidence and observe the demeanor of witnesses for herself.

[28] For all of these reasons, the trial court abused its discretion when it deviated from the direction provided under Trial Rule 63(A) and issued new findings of fact and new conclusions of law based only upon a review of the transcripts. "To hold otherwise would be to grant a power of review to the successor judge that is not even claimed by appellate courts." *See Urbanational*, 175 Ind. App. at 421, 372 N.E.2d at 746.

[29] Accordingly, we reverse the trial court's orders granting Mother's and R.D.'s post-trial motions and remand for a new, consolidated trial on the parenting time and custody issues presented by Mother's and Father's divorce case and paternity case concerning M.D.

[30] Reversed and remanded for a new, consolidated trial.

Tavitas, J., and Foley, J., concur.