



FILED

Mar 12 2026, 1:26 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 25S-DR-226

## Steven Norris,
*Appellant*

—v—

## Jennifer Norris,
*Appellee*

---

Argued: November 18, 2025 | Decided: March 12, 2026

Appeal from the Marion Superior Court
No. 49D14-1403-DR-9766
The Honorable Alicia A. Gooden, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-DR-1109

---

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, Goff, and Molter concur.

**Rush, Chief Justice.**

Because trial courts regularly observe witness demeanor and assess credibility firsthand, they are best positioned to gauge the significance of the testimony and evidence before them. By contrast, reviewing courts like ours consider only the paper record. So, recognizing our limited role, we do not reweigh evidence or reassess credibility. Nor do we require trial courts to accept a witness's self-serving testimony even when it's uncontradicted.

Here, an ex-husband claimed that his ex-wife's failure to pay a joint loan—as required by their divorce settlement—damaged his credit rating, causing financial harm. During an evidentiary hearing, the ex-husband testified about his claimed damages but offered scant corroborating evidence. The trial court ultimately found the ex-wife in contempt for not paying the loan but declined to award the ex-husband damages, finding them speculative and unproven. The Court of Appeals issued an opinion partially reversing the trial court. And although that appellate opinion was not certified, the trial court issued a revised order to comply with it.

We first hold that the trial court did not clearly err in declining to award the ex-husband damages. We then hold that the trial court's revised order is void because the court had no jurisdiction to issue it during the pendency of this appeal. We thus affirm the court's original order and remind trial courts, administrative agencies, parties, and counsel to refrain from relying on uncertified appellate opinions.

## Facts and Procedural History

Steven Norris and Jennifer Norris divorced in 2014 after four years of marriage. They reached a settlement agreement, which was incorporated into the dissolution decree, that awarded Jennifer the marital home and made her responsible for all home-related debts. One of those debts was a $4,220 "furnace loan with Wells Fargo on a Home Projects Visa." Jennifer agreed that "all payments" would be "made on time" and, if not, Steven could "pursue" her "for any credit reporting or scoring damages."

In 2017, Jennifer stopped making payments on the Wells Fargo loan and told Steven she was going to file for bankruptcy. Steven was not served with any notice of Jennifer's bankruptcy proceedings, although he attended a creditors meeting, and he missed a deadline to object to the discharge of Jennifer's debt to Wells Fargo. Ultimately, Wells Fargo failed to prove it had perfected a security interest in any of Jennifer's property, so its claim was treated as unsecured. Jennifer then began paying off part of her debts—though not the Wells Fargo loan—in installments pursuant to a payment plan. And when she completed those payments in 2021, her debt to Wells Fargo was deemed discharged through bankruptcy. Steven, meanwhile, made no payments on the loan.

The following year, Steven filed a contempt petition for Jennifer's failure to pay the Wells Fargo loan. He claimed that he had been pursued by "Wells Fargo and other creditors," his "credit ha[d] been damaged," and he was "unable to secure lending for purchasing a home, etc."

In November 2023, the trial court held a lengthy evidentiary hearing on multiple issues, including Steven's contempt petition. Steven testified that Jennifer's non-payment reduced his credit rating, forcing him to pay an extra $300 per month in interest on a truck loan for three years before he managed to refinance the loan at a more favorable interest rate. He also stated that he was a general contractor and claimed that, because of his lower credit rating, he lost a nearly finalized $142,000 loan to build a house on land he owned. And he testified that he was denied an economic-relief loan during the pandemic. To support these claims, Steven introduced screenshots showing his declining credit rating from 2016 to 2017, as well as a notice from a credit agency reflecting missed payments on the Wells Fargo loan. But he stated he had gotten "very upset and intoxicated" and burned documents concerning the lost home-construction loan. An attorney also testified that missed payments can significantly affect one's credit rating, but he had not reviewed Steven's credit report. And a real estate broker testified that if Steven had built the house as planned in 2018, it would be worth around $360,000, though he could not say how much it would have cost to build. Based on this evidence, Steven specifically requested $228,800 in damages: $218,000 in

lost home equity plus $10,800 in extra truck payments (but not the $4,220 balance on the Wells Fargo loan).

A few months after the hearing, the trial court issued an order in which it found Jennifer in contempt for her "willful failure" to pay the loan. But the court did not award Steven any damages, finding that his "professed damages were based upon speculation" and there was "insufficient evidence to show a direct correlation" between the unpaid Wells Fargo loan and Steven's credit rating.

Steven appealed, arguing only that the trial court erred in declining to award him damages. In a published opinion, a divided Court of Appeals panel partially reversed, instructing the trial court to award Steven over $14,000 and deciding other issues not raised by the parties. *Norris v. Norris*, 253 N.E.3d 1115, 1127 (Ind. Ct. App. 2025). Judge Tavitas dissented, concluding that the majority had reweighed evidence. *Id.* at 1127–28 (Tavitas, J., dissenting). Without waiting for certification, the trial court issued a revised order carrying out the Court of Appeals' instructions.

Jennifer petitioned for transfer, which we granted, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Because the trial court entered findings of fact and conclusions of law, our review is for clear error under Trial Rule 52(A). *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). In conducting this review, we determine whether the evidence supports the court's findings and whether those findings support the court's judgment. *Id.* We do not reassess witnesses' credibility or reweigh evidence. *Id.* at 124. And we will reverse only if the findings lack factual support in the record or if the judgment applies the wrong legal standard to properly found facts. *Wysocki v. Johnson*, 18 N.E.3d 600, 603–04 (Ind. 2014).

# Discussion and Decision

A party commits civil contempt by failing to do something a court orders for the benefit of an opposing party. *Cowart v. White*, 711 N.E.2d 523, 530 (Ind.), *clarified on reh'g*, 716 N.E.2d 401 (Ind. 1999). When this happens, trial courts have inherent authority to hold a disobedient party in contempt and to sanction them "to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions." *In re Paternity of Pickett*, 44 N.E.3d 756, 770–71 (Ind. Ct. App. 2015) (quoting *Scoleri v. Scoleri*, 766 N.E.2d 1211, 1221 (Ind. Ct. App. 2002)). Though determining the amount of damages falls squarely within the trial court's discretion, *City of Gary v. Major*, 822 N.E.2d 165, 172 (Ind. 2005), those damages "may not be based on mere conjecture, speculation, or guesswork," *Ponziano Constr. Servs. Inc. v. Quadri Enters., LLC*, 980 N.E.2d 867, 873 (Ind. Ct. App. 2012).

In reviewing a damages decision, we defer to our trial courts as factfinders, recognizing that they are "far better than appellate courts 'at weighing evidence and assessing witness credibility.'" *S.D. v. G.D.*, 211 N.E.3d 494, 498 (Ind. 2023) (quoting *Snow v. State*, 77 N.E.3d 173, 177 (Ind. 2017)). And so, absent legal error, we reverse a sanctions ruling "only when there is no evidence to support" it. *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 204 (Ind. 2012). That said, a trial court commits legal error if it issues an order without jurisdiction. And, as relevant here, once an appellate court acquires jurisdiction over a case, the trial court may not revise the judgment under appeal until an appellate opinion is both issued and certified. *G.W. v. State*, 231 N.E.3d 184, 192 (Ind. 2024). Indeed, Appellate Rule 65(E) prohibits trial courts, administrative agencies, and parties from taking any action in reliance upon uncertified appellate opinions.

These principles guide our resolution of this appeal, in which Steven challenges only "the lack of sanctions" for Jennifer's contumacious actions. We first explain why the trial court did not clearly err in declining to award Steven damages. We then explain why the court's revised order, issued while this appeal remained pending, is void. Ultimately, we affirm the trial court's original order and remind trial courts, administrative

agencies, parties, and counsel to refrain from acting in reliance upon uncertified appellate opinions.

## I. The trial court did not clearly err in declining to award Steven damages.

We begin by determining whether the trial court clearly erred in declining to award Steven damages for credit-related losses stemming from the unpaid Wells Fargo loan. Steven asserts that the court disregarded "[u]nrefuted testimony" that Jennifer's failure to pay the loan hurt his credit rating, which he claims led to increased truck-loan payments, a denied home-construction loan, and a denied economic-relief loan during the pandemic. Jennifer responds that the court acted within its discretion due to the "speculative nature" of Steven's claims "and the lack of evidence of actual monetary damages."

We agree with Jennifer. Once the trial court held Jennifer in contempt, it could have ordered her to pay Steven any resulting credit-related damages under either its inherent authority or the settlement agreement. But considering the dearth of evidence to support Steven's claimed damages, coupled with the deference we afford the trial court as factfinder, we conclude that it did not clearly err.[1]

Though Steven testified about his alleged credit-related damages, he offered little supporting evidence. He introduced two screenshots showing a 73-point decline in his credit rating from October 2016 to October 2017, but he presented neither a credit report nor an expert opinion explaining his personal credit history. Therefore, the trial court could not determine whether factors other than the unpaid loan might have affected Steven's credit rating. Additionally, though Steven testified

[1] Aside from resolving Steven's contempt petition, the trial court instructed counsel to file a joint notice offsetting various amounts Steven and Jennifer were ordered to pay each other. Counsel did not do so. But as this pending joint notice will only tidy up the net effect of the payments ordered, and no outstanding claims remain, we have appellate jurisdiction over a final judgment here. *See* App. R. 2(H)(1), 5(A).

that Wells Fargo had sent him several "collection letters," he did not submit any into evidence. And he likewise offered no documentary evidence related to his claimed increase in truck-loan payments or his claimed denials of home-construction and economic-relief loans. Simply put, Steven presented little evidence corroborating his claims that Jennifer's failure to pay the Wells Fargo loan caused the decline in his credit rating and resulted in financial damages.

These evidentiary shortcomings support the trial court's finding that Steven's request for damages was "unpersuasive." To be sure, the trial court could have believed Steven's testimony, found that the unpaid loan impacted his credit rating and caused him financial harm, and awarded him damages. But "factfinders are not required to believe a witness's testimony even when it is uncontradicted." *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004). And we will not reassess Steven's credibility or reweigh the evidence for ourselves.

Ultimately, this record supports the trial court's finding that the size of Steven's alleged financial losses and their connection to the unpaid Wells Fargo loan were speculative and unproven. That finding, in turn, supports the court's conclusion that Steven was not entitled to damages. That said, if he suffers other financial losses in the future, he may seek recourse at that time. Until then, he has merely suffered a breach of the settlement agreement without establishing resulting damages.

We now turn to the actions the trial court, the parties, and their attorneys took during the pendency of this appeal.

## II. Trial courts, administrative agencies, parties, and counsel must not act in reliance upon uncertified appellate opinions.

After the Court of Appeals issued its published opinion that partially reversed the trial court's judgment, Jennifer timely sought rehearing. While that request was pending, the trial court, on its own, issued a revised order to implement the Court of Appeals' instructions. But the trial court lacked authority to issue that order because the appellate

opinion was not yet certified. We thus take this opportunity to emphasize the importance of following Appellate Rule 65(E), which prohibits trial courts, administrative agencies, and parties from taking action based on published opinions or memorandum decisions (collectively "opinions") before they are certified.

An opinion is not final so long as opportunities for further appellate review remain. When the Court of Appeals issues an opinion, the appellate clerk's office initially serves **uncertified** copies on counsel, unrepresented parties, and the trial court. App. R. 65(E). Parties then have thirty days to petition for rehearing in the Court of Appeals or forty-five days to seek transfer to this Court. App. R. 54(B), 57(C)(1). If rehearing is sought, transfer petitions must then be filed within thirty days after the Court of Appeals' disposition of the rehearing petition. App. R. 57(C)(2). And if this Court grants transfer and issues an opinion, a party has thirty days to petition for rehearing. App. R. 54(B).

Because of these opportunities for appellate review, the clerk's office will certify a Court of Appeals opinion "only after the time for all Petitions for Rehearing, Transfer, or Review has expired, unless all the parties request earlier certification." App. R. 65(E). And if we grant transfer, the clerk's office will not certify any opinion until we dispose of the appeal. *Id.* In practice, certification occurs a few days after the window for review closes. And only after certification may a trial court, administrative agency, or party "take any action in reliance upon" the opinion. *Id.*

This certification process prevents trial courts from interfering with the subject matter of a pending appeal. Once an appeal is filed and the trial court clerk's record is complete, "Appellate Rule 8 divests the trial court of 'jurisdiction to act upon the judgment appealed from until the appeal has been terminated.'" *Conroad Assocs., L.P. v. Castleton Corner Owners Ass'n, Inc.*, 205 N.E.3d 1001, 1005 (Ind. 2023) (quoting *Schumacher v. Radiomaha, Inc.*, 619 N.E.2d 271, 273 (Ind. 1993)). And thus, before certification, a trial court's order is void and a nullity if it interferes with the appeal's subject matter. *G.W.*, 231 N.E.3d at 192. Only upon certification does jurisdiction over that subject matter return to the trial court. *Id.*

This case illustrates the pitfalls of ignoring these rules. While the appeal was pending, the trial court revised its judgment in an order that was and remains void. Yet, relying on that order, Jennifer began making payments of $500 per month to Steven—which his law firm held in trust—to satisfy the revised judgment. The parties will now have to unwind those payments. Going forward, we urge trial courts, administrative agencies, parties, and counsel to comply with Appellate Rule 65(E) by not taking any action in reliance upon uncertified opinions.

## Conclusion

The trial court did not clearly err in declining to award Steven damages for Jennifer's contempt in its original order. But the court did err in issuing a revised order imposing sanctions pursuant to the Court of Appeals' uncertified opinion. Accordingly, we affirm the trial court's original order.

Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANT
Denise F. Hayden
Jessica S. Lacy
Lacy Law Office, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Nicole A. Zelin
Pritzke & Davis, LLP
Greenfield, Indiana